IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ERNEST STEVENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-698-JPG-CJP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Ernest Stevenson, represented by counsel,

seeks judicial review of the final agency decision denying his application for Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Mr. Stevenson applied for benefits in October 2011 alleging disability beginning on

September 26, 2011.   He later amended his alleged date of onset to April 23, 2014.   After holding

an evidentiary hearing, ALJ Bradley L. Davis denied the application on February 11, 2015.   (Tr.

28-38.)   The Appeals Council denied review, and the decision of the ALJ became the final agency

decision subject to judicial review.   (Tr. 10.)

Administrative remedies have been exhausted and a timely complaint was filed in this

Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1.     The ALJ failed to account for plaintiff's limitations in ability to maintain
concentration, persistence or pace in assessing plaintiff's mental residual functional

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.   *See* https://www.ssa.gov/agency/
commissioner.html (visited Feb. 7, 2017).   She is automatically substituted as defendant in this case.   *See* Fed. R.
Civ. P. 25(d); 42 U.S.C. § 405(g).

capacity (RFC).

2.      The hypothetical question posed to the vocational expert (VE) did not include all limitations found by the ALJ in his RFC assessment.

## Applicable Legal Standards

To qualify for DIB or SSI benefits, a claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[2]

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not

---

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

disabled.   The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work.   If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined:   (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984);   *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled….   If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court

must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the

ALJ's findings were supported by substantial evidence and whether any errors of law were made.

*See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306

(7th Cir. 1995)).   This Court uses the Supreme Court's definition of substantial evidence, *i.e.*,

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into

consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of

credibility, or substitute its own judgment for that of the ALJ.   *Brewer v. Chater*, 103 F.3d 1384,

1390 (7th Cir. 1997).   However, while judicial review is deferential, it is not abject; this Court

does not act as a rubber stamp for the Commissioner.   *See Parker v. Astrue*, 597 F.3d 920, 921

(7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Davis followed the five-step analytical framework described above.   He determined

that plaintiff had not worked since April 23, 2014.   He was insured for DIB through December 31,

2017.[3]

Plaintiff had initially alleged disability as of September 26, 2011, but changed the date of

onset to April 23, 2014.   On that date, "he began alcohol rehabilitation, and his mental limitations

were no longer drug and alcohol related."   (Tr. 28.)

The ALJ found that plaintiff had severe impairments of osteoarthritis, degenerative disc

disease of the lumbar spine, and depression, and that these impairments do not meet or equal a

---

[3] The date last insured is relevant only to the claim for DIB.

listed impairment. At this step, the ALJ determined that plaintiff had moderate difficulties in both social functioning and ability to maintain concentration, persistence or pace.

The ALJ found that Mr. Stevenson had the RFC to perform work at the light exertional level with some physical and mental limitations. The mental limitations were that plaintiff was limited to simple, repetitive and routine tasks; only occasional interactions with co-workers and the general public; and only occasional changes in a routine work setting.

Based upon the testimony of a VE, the ALJ found that plaintiff was not able to do his past relevant work. However, he was not disabled because he was able to do other jobs that exist in significant numbers in the regional and national economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

**1.      Agency Forms**

Plaintiff was born in 1965 and was 48 years old on the amended date of onset. (Tr. 282.) He had worked in the past as a cook and an assistant manager in a fast food restaurant and as a laborer for a temp agency. (Tr. 287.)

**2.      Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on January 14, 2015. (Tr. 47.)

Plaintiff testified that he was unable to work because of depression. He was hospitalized on April 23, 2014, the amended date of onset, because of suicidal thoughts. He had been treated for depression by a therapist and a nurse practitioner at Chestnut Health Systems, and he qualified

for housing through Chestnut because of his mental condition.   A case manager from Chestnut checked on him once a week to make sure he was taking his medicine, eating right and keeping doctors' appointments.   She also took him to the store and arranged for any classes he might need at Chestnut.   (Tr. 52-55.)   He was living in transitional housing.   (Tr. 61.)

A VE also testified.   The ALJ asked her a hypothetical question that corresponded to the ultimate RFC findings.   The VE testified that this person could not do plaintiff's past work. However, there were other jobs that he could do.   (Tr. 66-67.)

If the person would also be off-task up to twenty percent of the workday, he would not be able to work, according to the VE.   (Tr. 67.)

### 3.	Medical Records

In view of the issues raised, a brief summary of the medical records following the amended onset date will suffice.

Plaintiff was hospitalized at Touchette Regional Hospital from April 23, 2014, through April 30, 2014.   He was diagnosed with major depression, recurrent, severe; alcohol use disorder; cocaine use disorder; and seizure disorder.   He was homeless and had a history of two past suicide attempts.   He was put on the alcohol detox program.   He was discharged to Chestnut Crisis.   (Tr. 704, 707.)

On May 6, 2014, plaintiff was assessed by an Advanced Practice Nurse at Chestnut Health Systems.   He was an inpatient in a crisis residential unit.   She diagnosed major depressive disorder with psychotic features and alcohol dependency, in remission.   She continued his current medications of Celexa, Dilantin, Remeron, and Trazodone.   (Tr. 694-99.)

The Advanced Practice Nurse continued to see him and to prescribe psychiatric medications.   (Tr. 790-99.)   He also received counselling and supportive services through

Chestnut.  (841-1067.)

Carmen Boeser, Ph.D., performed a consultative psychological exam in June 2014. Plaintiff reported a long history of problems with alcohol.  He had last used alcohol in April 2014, before he was hospitalized for suicidal ideation.  He was currently attending a twelve step program.  He had been diagnosed with depression in 2000.  He had been homeless on and off for years and was currently living in a transitional homeless shelter.  He reported problems concentrating and with task persistence.  She noted that he "loses focus easily" but his concentration was "[a]dequate during the course of examination with redirection."  She diagnosed major depressive disorder, recurrent, and alcohol dependence in early remission.  (Tr. 712-15.)

### 4.    Dr. Boeser's Opinion

Dr. Boeser completed a form entitled "Medical Source Statement of Ability to do Work-Related Activities (Mental)."  This form asked her to assess plaintiff's limitations in two areas:  ability to understand, remember and carry out instructions; and ability to interact with other people and respond to changes in the work setting.  Dr. Boeser indicated that he was moderately limited in ability to understand and remember complex instructions and to make judgments on complex work-related decisions.  The form did not ask the doctor to assess limitations in maintaining concentration, persistence and pace.  (Tr. 716-18.)

## Analysis

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record.  *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).  This is a well-established rule.  *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases).  If the ALJ finds that a plaintiff has a moderate limitation in

maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (Tr. 32.) He made this finding at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. He noted that, while the step three determination is not a mental RFC assessment *per se*, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 32.) However, neither the hypothetical question posed to the VE nor the RFC assessment mentioned a limitation in concentration, persistence or pace. Rather, the ALJ limited plaintiff to "simple, repetitive and routine tasks," occasional interactions with co-workers and the public, and occasional changes in a routine work setting.

Immediately after stating that plaintiff had moderate difficulties with regard to concentration, persistence or pace, ALJ Davis stated that plaintiff was limited to simple, repetitive tasks and only occasional changes. This suggests that ALJ Davis believed that plaintiff's difficulties in maintaining concentration, persistence or pace were accommodated by those limitations. The ALJ discussed Dr. Boeser's exam and report at Tr. 35, but did not mention her observation that plaintiff loses focus but concentration was adequate with redirection.

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart*, a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for

mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner*, 627 F.3d at 620; *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016).

The Commissioner defends the ALJ's decision by arguing that the category on the form filled out by Dr. Boeser that is "most closely analogous to any limitation in concentration, persistence, or pace is the ability to carry out tasks." She argues that Dr. Boeser's answers on the form can be read to indicate that plaintiff has no problems with concentration, persistence or pace as long as the task is simple. Doc. 26, pp. 4-5.

There are several problems with the Commissioner's argument. First, the agency asked Dr. Boeser to complete a Medical Source Statement and not the usual Mental Residual Functional Capacity Assessment form (Form SSA-4734-SUP) that is commonly used where a claimant alleges mental limitations. Unlike the Mental RFC Assessment form, the form furnished to Dr. Boeser did not explicitly require Dr. Boeser to evaluate plaintiff's ability to maintain concentration, persistence or pace. The Commissioner's argument assumes, without any support in the language of the form or in Dr. Boeser's remarks, that ability to carry out tasks is analogous to ability to maintain concentration, persistence or pace. However, this assumption is contrary to well-established Seventh Circuit precedent cited above. In addition, the ALJ (and the Commissioner) ignored Dr. Boeser's observation that plaintiff loses focus and required "redirection."

The bottom line here is that the ALJ found that Mr. Stevenson had moderate difficulties in maintaining concentration, persistence or pace. It is true, as the Commissioner points out, that he

made this finding at step three. Regardless, he represented that the RFC assessment would reflect the degree of limitation that he found at that step. Binding Seventh Circuit precedent establishes that a limitation to simple, routine tasks or to unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace.

The ALJ's assessment of plaintiff's RFC was not supported by substantial evidence. Therefore, this case must be remanded to the Commissioner for rehearing. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

### Conclusion

The Commissioner's final decision denying Ernest Stevenson's application for DIB and SSI benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATE:   June 29, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**